UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD M. BABCOCK,

          Plaintiff,

v.

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,

          Defendant.

_____/

Civil Action No.: 17-10828
Honorable Mark A. Goldsmith
Magistrate Judge Elizabeth A. Stafford

## REPORT AND RECOMMENDATION
## ON CROSS MOTIONS FOR SUMMARY JUDGMENT [ECF Nos. 17, 18]

Plaintiff Donald M. Babcock appeals a final decision of Defendant

Commissioner of Social Security (Commissioner) denying his application

for supplemental security income benefits (SSI) under the Social Security

Act (the Act).  Both parties have filed summary judgment motions, referred

to this Court for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B).  The Court **RECOMMENDS**:

- **DENYING** the Commissioner's motion for summary judgment
  [ECF No. 18];

- **GRANTING** Babcock's motion [ECF No. 17]; and

- the Commissioner's decision be **REMANDED** for further

consideration under sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Babcock's Background and Disability Applications

Babcock, then age 37, protectively filed an application for supplemental security income on October 26, 2012, alleging a disability beginning January 1, 2001.[1]  After a hearing, ALJ Kendra Kleber issued an unfavorable decision in May 2014.  [ECF No. 11-3, Tr. 165-86].  Babcock appealed the decision and, in an October 2015 order, the Appeals Council vacated that decision and remanded the matter to ALJ Kleber for another hearing.  [ECF No. 11-3, Tr. 187-90].  Following the remand hearing, ALJ Kleber again denied Babcock's application, finding that he was not disabled.  [ECF No. 11-2, Tr. 19-36].  The Appeals Council denied review, making this decision the final decision of the Commissioner.  [ECF No. 11-2, Tr. 1-6].  Babcock timely filed for judicial review.[2]  [ECF No.1].

Babcock had previously been found not disabled and thus ineligible for SSI for a period from August 2006 through 2009.  [ECF No. 11-3, Tr.

---

[1]  Although Babcock alleges that his disability started on January 1, 2001, he is not eligible for SSI before the date he actually applied for benefits on October 26, 2012.  *See* 20 C.F.R. § 416.303(g).

[2]  After the Appeals Council denied review, Babcock filed a new application for Title XVI benefits, and was awarded SSI benefits as of March 2017. [ECF No. 17; Ex. 1].

139-51].

Babcock has at least a high school education and has past relevant work as a meat counter clerk, stock clerk, groundskeeper and gas station attendant. Babcock alleged that he was disabled due to the following illnesses, injuries or conditions: diabetes, social anxiety disorder, learning disabled, leg pain and swelling, back and neck problems, high blood pressure, and high cholesterol. [ECF No. 11-3, Tr. 152].

## B. The ALJ's Application of the Disability Framework

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 416.920(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[3] *Id.* Third, if the claimant's severe

---

[3] A severe impairment is one that "significantly limits [the claimant's]

3

impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

In an April 24, 2009, decision, ALJ John Rabaut found Babcock to have no medically determinable impairment. [ECF No. 11-3, Tr. 137-48]. Applying Acquiescence Rulings 98-3(6) and 98-4(6), the present ALJ (Judge Kleber) first concluded the evidence submitted regarding Babcock's condition and functioning since the date of the current application, October 12, 2012, established a change in his condition, so she was not bound by all of the prior ALJ's findings in resolving the current application. [ECF No. 11-2, Tr. 20]. The ALJ then analyzed Babcock's claim using the five-step

physical or mental ability to do basic work activities." § 1520(c).

sequence, concluding that he was not disabled.

At the first step, the ALJ found that Babcock had not engaged in substantial gainful activity since his date of application. [*Id.*, Tr. 22]. At the second step, she found that Babcock continues to have the severe impairments of "diabetes with peripheral neuropathy of the feet, degenerative joint disease of both knees, degenerative disc disease of the lumbar spine, bipolar disorder, personality disorder and anxiety disorder. He has the additional severe impairments of proliferative diabetic retinopathy, kidney disease and obesity." [*Id.*]. Next, the ALJ concluded that that Babcock's severe impairments did not meet or equal the severity of the listed impairments. [*Id.*, Tr. 27-28].

Between steps three and four, the ALJ found that Babcock had the RFC to perform a limited range of light work as defined in 20 CFR 416.967(b), with additional limitations:

> [A]t his best[4] he is able to lift or carry up to 20 pounds occasionally or ten pounds frequently. He can stand or walk up to one hour of an[] eight-hour workday for ten minutes at a time.

_____

[4] The Court questions the ALJ's determination of Babcock's RFC at his "best," rather than addressing his capacity for sustained performance of work on a regular and continuing basis. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8P, 1996 WL 374184. *See also Meece v. Barnhart*, 192 F. App'x 456, 466 (6th Cir. 2006) (awarding benefits when plaintiff could perform some activities, but not engage in work on a regular and continuing basis).

He can sit for up to eight hours of an eight-hour work for 60 minutes at a time, at the work station without going off task. He can perform work that does not require operating foot controls. He cannot climb ladders or scaffolds. He can perform work that does not require that he balance on a moving platform, crawl or kneel. The work he can perform does not involve vibration or commercial driving. Mr. Babcock can work in an environment involving no interaction with the public and occasional and superficial interaction with coworkers. Superficial is defined as interaction for the purpose of serving, speaking to or receiving instructions. The work he can perform is low stress, defined as work that requires no more than occasional decision making and no more than occasional changes in the work setting.

[*Id.*, Tr. 31]. At the fourth step, the ALJ found that Babcock could not perform past relevant work. [*Id.*, Tr. 35]. With the assistance of VE testimony, the ALJ determined at step five that, based on Babcock's age, education, work experience and RFC, he could perform the positions of assembler, packager, and sorter, for which significant jobs existed in the national economy. [*Id.*, Tr. 36]. As such, the ALJ concluded that Babcock had not been under a disability since October 26, 2012, the application date. [*Id.*]

## II.    ANALYSIS

### A.

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r*

*of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is

"more than a scintilla of evidence but less than a preponderance; it is such

relevant evidence as a reasonable mind might accept as adequate to

support a conclusion."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241

(6th Cir. 2007) (internal quotation marks and citation omitted).  Only the

evidence in the record below may be considered when determining

whether the ALJ's decision is supported by substantial evidence.  *Bass v.*

*McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Babcock argues that the ALJ erred by not including all of his mental

and physical impairments in the RFC, by propounding a defective and

partially inaudible hypothetical question to the vocational expert, and by

making an erroneous credibility determination.  The Court finds that the

ALJ's reasoning for her assessment of Babcock's mental impairments

precludes meaningful review, and recommends that this matter be

remanded.

**B.**

Babcock argues that the ALJ did not adequately account for his

limitations in concentration, persistence, or pace as noted by psychologist

George Pestrue, Ph.D.  In a November 2012 mental residual capacity

assessment, Dr. Pestrue opined that Babcock was "markedly limited" in his

7

ability to complete a normal work day without interruption, to interact appropriately with the general public, and to accept instructions and respond appropriately to the criticism of supervisors. [ECF No. 11-7, Tr. 455-64]. He was also "moderately limited" in his ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes. [ECF No. 11-7, Tr. 456]. Dr. Pestrue further indicated that Babcock had strong social anxieties, strong mood swings with anger outbursts, and reading comprehension problems. [*Id.*] Babcock says that Dr. Pestrue's mental status examination supports these limitations, noting that Babcock had bipolar disorder with social anxiety disorder and with severe social/psycho stressors. Dr. Pestrue noted that Babcock's prognosis was "guarded" and assigned him a GAF score of 47.

In support of his claim of error, Babcock argues that the ALJ endorsed Dr. Pestrue's opinion and that she was therefore required to incorporate Dr. Pestrue's assessment of Babcock's limitations into the RFC. The Court agrees that the ALJ's reasoning failed to provide an accurate and logical bridge between the evidence and result, precluding meaningful review. *Gross v. Comm'r of Soc. Sec.*, 247 F. Supp. 3d 824, 829 (E.D. Mich. 2017) (ordering remand because ALJ's drew "no accurate and logical bridge to instruct the Court of her reasoning.").

8

When determining that Babcock's impairments did not meet or equal a listing, the ALJ explained why she did not give great weight to Dr. Pestrue's opinion:

> Dr. Pestrue noted that Mr. Babcock had marked limitations in performing detailed work like activities, or working for extended periods, or dealing with the public or supervisors.  Dr. Pestrue felt that Mr. Babcock was phobic regarding public transportation and people, that he had strong social anxieties, strong mood swings and anger outbursts, and reading comprehension problems.  However, it is not clear from Dr. Pestrue's report that he actually tested Mr. Babcock's reading ability which indicates to me that Dr. Pestrue accepted Mr. Babcock's self-reporting.  While it is the nature of psychological evaluations to rely heavily on self-reporting, Mr. Babcock has not made these same allegations to other professionals including those who are actively involved in his care.  I find the inconsistency between Mr. Babcock's report to Dr. Pestrue and his complaints to his treating providers to be persuasive in leading me to conclude that Dr. Pestrue's opinions are not entitled to great weight.  And Dr. Pestrue's opinions are the only evidence in the record suggesting that Mr. Babcock might continue to have difficulties with maintaining concentration, persistence or pace.

[ECF No. 11-2, PageID 31 (internal citations omitted)].

But when explaining the evidence supporting the assessed RFC, the ALJ "accept[ed] the opinion of Dr. Pestrue because he had an opportunity to examine Mr. Babcok prior to providing his opinion."  [*Id.,* Tr. 34].  The ALJ described Dr. Pestrue's opinions that Babcock was markedly limited in his abilities to carry out, understand and remember detailed instructions; concentrate for extended periods; complete a normal workday and

workweek without interruption; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and use public transportation. [*Id.*]. The ALJ did not challenge any of these findings. [*Id.*].

The form that Dr. Pestrue signed defined "markedly limited" as meaning that "the individual cannot usefully perform or sustain the activity." [ECF No. 11-7, Tr. 455]. Yet the ALJ stated that the RFC that would allow Babcock to perform a limited range of light work was "supported by" the medical opinions, including Dr. Pestrue's. [ECF No. 11-2, Tr. 35]. The ALJ wrote that the RFC was supported only "in part" by another opinion, but she did not place a similar limitation on degree to which Dr. Pestrue's opinion supported the RFC. [*Id.*]. Thus, in the portion of her opinion in which the ALJ explained her assessment of Babcock's RFC, she expressed nothing less than full acceptance of Dr. Pestrue's opinion.

The ALJ's assessed RFC incorporated some of Dr. Pestrue's opinion by, for example, precluding him from interacting with the public and limiting his interaction with co-workers. [ECF No. 11-2, Tr. 31]. But Dr. Pestrue's opinion that Babcock cannot usefully perform a normal workweek or weekday without unreasonable interruptions is wholly inconsistent the

ALJ's assessed RFC for a limited range of light work. And while the ALJ initially found Dr. Pestrue's opinion to be inconsistent with other evidence, she did not specifically critique Dr. Pestrue's opinion that Babcock had no useful ability for full-time work. [*Id.*, Tr. 31].

Since Dr. Pestrue was not a treating physician, the ALJ was not required to give good reasons for declining to give the opinion controlling weight. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2017) (the good reasons requirement applies only to opinions from treating physicians). But the ALJ's reasoning must permit meaningful review, and the Court can find no logical bridge between her conclusion on the one hand that Dr. Pestrue's opinion is not entitled to great weight, and her statements on the other hand that she accepted Dr. Pestrue's opinion and that it supported her assessed RFC. Nor is there is a logical bridge between her statements on the one hand that she accepted Dr. Pestrue's opinion and that it supported her assessed RFC, and her determination on the other hand that Babcock could provide a limited range of light work. This matter should thus be remanded for clarification of the ALJ's reasoning.

## C.

Babcock also argues that the ALJ erred in not fully crediting the opinion of treating podiatrist Michael T. Ambroziak, D.P.M., concerning missing work days and the need to elevate his legs. The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723.

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate

review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted).

Here, the ALJ provided the necessary "good reasons" when she discounted Dr. Ambroziak's opinion. Dr. Ambroziak treated Babcock for diabetic ulcers in his feet and completed two "check-the-box" forms indicating that Babcock would miss one or two workdays per month, that he had to elevate his legs while at work, and that he could not work a full-time schedule. [ECF No. 11-7, Tr. 582; ECF No. 11-11, Tr. 933]. The ALJ reasonably discounted these opinions because of their "check-the-box" format and inconsistency with the record. [ECF No. 11-2, Tr. 33-34]. Courts in this circuit have held that a medical source statement in "check-the-box" format, by itself, provides little to no persuasive value—"to hold otherwise would neglect its glaring lack of narrative analysis." *Jackson v. Comm'r of Soc. Sec.*, No. 1:16-CV-14404, 2017 WL 4699721, at *7 (E.D. Mich. Oct. 19, 2017); *see also Ellars v. Comm'r of Soc. Sec.*, 647 F. App'x 563, 566 (6th Cir. 2016) ("[T]he administrative law judge properly gave a check-box form little weight where the physician provided no explanation for the restrictions entered on the form and cited no supporting objective medical evidence.").

The ALJ also relied upon a finding that Dr. Ambroziak consistently stated that Babcock's condition was improving or stable. [ECF No. 11-2, PageID 33]. The record confirms that Babcock denied pain when walking, demonstrated a normal gait in many examinations, and admitted to standing/walking for prolonged periods. [ECF No. 11-7, Tr. 461, 529, 538; ECF No. 11-8, Tr. 721, 723, 779, 789; ECF No. 11-11, Tr. 909, 912, 927]. These records show, among other things, that Babcock had "been on his feet during the fair last week" in August 2014, [ECF No. 11-8, Tr. 721]; had been on his feet for a few weddings and funerals in October 2014, [*Id.,* Tr. 723]; had normal toes and feet in June 2015, [ECF No. 11-11, Tr. 912]; had walked three and a half hours at one time in July 2015, but his toe was still "not that bad," [ECF No. 11-8, Tr. 779]; and had been on his feet a lot while hunting in December 2015, [*Id.*, Tr. 789].

Babcock's brief states, "Clearly the clinical records of Dr. Ambroziak, corresponding in time to the Questionnaire, support" his January 2014 conclusions. [ECF No. 17, PageID 1009-10]. He then cites, "[f]or example," three records from 2014 that he believes support Dr. Ambroziak's conclusions. [*Id.*, citing ECF No. 11-7, Tr. 603; ECF No. 11-8, Tr. 716, 758]. It appears that Babcock is inviting the Court to search the record to compare it against Dr. Ambroziak's opinions. That is not the

Court's job.  *Magnum Towing & Recovery v. City of Toledo*, 287 F. App'x 442, 449 (6th Cir. 2008) (it is not the court's job to search through the record to develop a party's claims); *Fielder v. Comm'r of Soc. Sec.*, No. 13–10325, 2014 WL 1207865, at *1 (E.D. Mich. Mar. 24, 2014) (rejecting attorney's invitation to search the record on client's behalf).  And since the ALJ cited good reasons for discounting Dr. Ambroziak's opinions, the Court is not permitted to reweigh the evidence just because Babcock cites to a few records that are consistent with Dr. Ambroziak's findings.  *See Albanna v. Comm'r of Soc. Sec.*, No. 15-CV-14264, 2016 WL 7238925, at *12 (E.D. Mich. Nov. 22, 2016), *report and recommendation adopted,* No. 15-14264, 2016 WL 7210715 (E.D. Mich. Dec. 13, 2016) ("Arguments which in actuality require 're-weigh[ing] record evidence' beseech district courts to perform a forbidden ritual.") (quoting *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014)).  Moreover, while Babcock asserts that the three 2014 records he cites are contrary to the ALJ's assertion that his condition had improved, the 2015 records indicating that his feet and toes were found to be normal, that he walked for hours and that he was on his feet a lot while hunting, fully support the conclusion that his condition had improved.

Some of the ALJ's reasoning for not giving controlling weight to Dr.

Ambroziak's opinions appears to be off the mark. For example, the ALJ stated that Dr. Ambroziak concluded in his January 2014 opinion that Babcock could perform competitive work on an ongoing basis if he were allowed to sit for eight hours per day and stand for zero hours. [ECF No. 11-2, Tr. 33, citing ECF No. 11-7, Tr. 581]. But Dr. Ambroziak said no such thing. He did say that Babcock could sit for eight hours out of a workday, but also said that he would need to recline or lie down during an eight hour workday for periods in excess of normal breaks, and that Babcock was not physically capable of working full time. [ECF No. 11-7, Tr. 581-82]. The ALJ found Dr. Ambroziak's note in October 2014 that Babcock would need to be off work indefinitely to be inconsistent with his January 2014 opinion. [ECF No. 11-2, Tr. 33, citing ECF No. 11-8, Tr. 716]. But again, the January 2014 opinion also said that Babcock could not work full time. [ECF No. 11-7, Tr. 582].

Still, Dr. Ambroziak's opinions were issued only in checkbox form, and there is support in the record for the ALJ's conclusion that Dr. Ambroziak's opinions were inconsistent with his records. Babcock's challenge to the ALJ's treatment of Dr. Ambroziak's opinions should be rejected.

**D.**

Babcock also contends that the hypothetical to the vocational expert is defective because a portion of the hypothetical is inaudible. Should this matter be remanded because of the ALJ's treatment of Dr. Pestrue's opinion, this challenge would be moot. If not, this challenge should be rejected because Babcock does not provide law supporting a finding that some inaudible words in a hearing transcript constitutes a violation of § 405(g). The Court also agrees with the Commissioner that the pertinent portions of the vocational expert's testimony on which the ALJ relied were sufficiently audible, as evidenced by the transcript.

Finally, Babcock contends that the ALJ made an improper credibility determination. Credibility determinations of witnesses are within the province of the ALJ and should not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241. In assessing Babcock's credibility, the ALJ noted that the objective medical evidence and clinical examination findings did not corroborate his alleged symptoms and limitations. First, the ALJ pointed to evidence that Babcock had not been compliant in taking his prescribed medications or in following prescribed treatment. In fact, Babcock's

treating providers stated that he was "extremely noncompliant with medication and lifestyle, often inconsistent in every aspect." [ECF No. 11-2, Tr. 32, citing ECF No. 11-8, Tr. 710]. An ALJ may properly consider the fact that a claimant does not take medication for an allegedly disabling impairment as one factor relevant to credibility. *See Bradley v. Sec'y of HHS*, 862 F.2d 1124, 1127 (6th Cir. 1988).

The ALJ also noted that Babcock's activities of daily living "are not limited to the extent one would expect, given his allegations of disabling symptoms." [ECF No. 11-2, Tr. 32]. These activities included watching television, doing light housework, preparing meals, taking care of his significant other and children, taking care of animals, shopping, driving, paying bills, playing cards, playing video games, drawing, hunting, and fishing. [*Id.*; *see also* ECF No. 11-6, Tr. 362-69; ECF No. 11-7, Tr. 461; ECF No. 11-8, Tr. 789]. As a matter of law, an ALJ may consider household and social activities in evaluating complaints of disabling pain. *See Crisp v. Sec'y of HHS*, 790 F.2d 450, 453 (6th Cir. 1986). Some of the daily activities listed by the ALJ, such as watching television, have nothing to do with Babcock's ability to work. *See Rogers*, 486 F.3d at 248 ("Yet these somewhat minimal daily functions are not comparable to typical work activities."). But the ALJ did not err when she considered Babcock's more

robust daily activities as one factor in the credibility determination.

The ALJ also indicated that a review of Babcock's history showed that he was only sporadically working prior to his alleged disability onset date, which raised the question of whether his continuing unemployment was due to a medical impairment. [ECF No. 11-2, Tr. 33]. Babcock's employment history was a relevant consideration. *See Oleary v. Comm'r of Soc. Sec.*, No. 14–10869, 2015 WL 730109, at *7 (E.D. Mich. Feb. 19, 2015) (a claimant's minimal work history is an appropriate consideration in assessing her credibility).

For all of these reasons, Babcock has failed to provide a compelling reason to disturb the ALJ's credibility determination.

## III.   CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion for summary judgment [ECF No. 18] be **DENIED**, that Babcock's motion for summary judgment [ECF No. 17] be **GRANTED**, and the Commissioner's decision be **REMANDED** for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: December 13, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in**

**length and complexity to the objections**, but there is otherwise no page

limitation. If the Court determines that any objections are without merit, it

may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 13, 2017.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager